IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| EX REL- Terrance Griffin,<br><br>                 Plaintiff,<br><br>v.<br><br>Ryshema Davis; Betty Smith; Brian Kendall; Jonathan Nance; F.S.S. Simons; F.S.S. Jay; F.S.S. Gore; F.S.S. Alston,[1]<br><br>                 Defendants. | C/A No. 0:23-4086-MGL-PJG<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Terrance Griffin, a self-represented state prisoner, brings this civil rights action pursuant to 42 U.S.C. § 1983 against the named defendants. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and

---

[1] In their motion, the defendants confusingly add a defendant (Food Service Specialist Thomas) to this matter who was not named or otherwise mentioned by Plaintiff in his Amended Complaint, and then seek dismissal of this "defendant" for Plaintiff's failure to include any allegations against Thomas. Because Thomas is not currently and has never been a defendant in this matter, the court need not address the defendants' argument as to Thomas.

Recommendation on the defendants' motion.[2] (ECF No. 93.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 94.) Plaintiff filed a response in opposition.[3] (ECF No. 120; Suppl., ECF No. 122.) Having reviewed the record presented and the applicable law, the court concludes that the defendants' motion should be denied.

## BACKGROUND

The following allegations are taken as true for purposes of resolving the pending motion. Plaintiff's allegations begin during the period from October 2019 to October 2022 while he was housed at the Lieber Correctional Institution ("Lieber") and primarily concern food-related complaints. He alleges that sometime in 2020 he requested to receive the alternate entrée menu—

---

[2] Although the defendants moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court observes that the defendants previously filed an answer to Plaintiff's Amended Complaint (see Ans., ECF No. 79), thus closing the pleadings and rendering the defendants' subsequent motion to dismiss untimely. See Fed. R. Civ. P. 12(b) (explaining that a "motion asserting any of [the] defenses [set forth in Rule 12(b)] must be made before pleading if a responsive pleading is allowed"). Accordingly, the court will convert the defendants' motion to dismiss into a motion for judgment on the pleadings. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (explaining that, under Rule 12(h), an untimely motion to dismiss under Rule 12(b)(6) may be treated as a motion for judgment on the pleadings under Rule 12(c)). Moreover, to the extent the defendants ask the court to treat their motion as one made under Rule 56 seeking summary judgment (Defs.' Mot. to Dismiss, ECF No. 93 at 1), the court denies such request as the defendants have presented no matters outside of the pleadings for the court to consider. Although Plaintiff attaches exhibits to his response in opposition to the defendants' motion, the majority of the exhibits do not pertain to the time period at issue in Plaintiff's Amended Complaint. Thus, for the reasons discussed below, because Plaintiff's allegations alone are sufficient to plausibly state a claim upon which relief can be granted, the court did not consider Plaintiff's exhibits when forming its recommendation.

[3] To the extent Plaintiff raises new claims or seeks to add new parties in his response to the defendants' motion, the new claims and parties are not properly before the court because Plaintiff has not requested leave of the court to further amend his Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

which he describes as a vegan diet—for unspecified health reasons. However, in the months following, he encountered several difficulties with this menu. For example, Plaintiff alleges that certain items that should have been included, such as vitamin B12 supplements or peanut butter, were not served with the meal; nor was any substitute for these items provided. Defendant Gore informed him that the items were out of stock. Plaintiff alleges that he lost weight as a result of the inadequacies of the alternate entrée menu, which he states did not meet nutritional standards, contained meager or undersized food portions, consisted of less than 2,400 calories, was not timely served, contained contaminated food, and was not served as frequently (only two meals daily on weekends) to "closed and medium custody" institutions (in contrast to minimum custody facilities). Plaintiff complains that the defendants denied food as a punishment, restricting canteen purchases for inmates who violate the rules. Plaintiff alleges that he complained about these issues to Defendants Kendall and Gore by filing requests to staff on the kiosk, followed by Step 1 and Step 2 grievances, which were all denied. Plaintiff alleges that Defendant Kendall (the warden at Lieber) and Defendant Gore (a food service specialist) were responsible for overseeing the operation of Lieber's café, ensuring that the café complied with all policies, and handling any food-related complaints at Lieber. Plaintiff alleges that Defendants Davis and Smith (nutritionists/dietitians with the South Carolina Department of Corrections) were responsible for creating and approving the deficient alternate entrée menu.

In October 2022, Plaintiff was transferred to Tyger River Correctional Institution ("Tyger River") where he remained incarcerated through the date he filed his Amended Complaint. While at Tyger River, he continued to experience issues with the alternate entrée menu. As he did with respect to Lieber, Plaintiff alleges that Defendant Nance (the warden at Tyger River) and Defendants Simons, Alston, and Jay (all food service specialists) were responsible for overseeing

the operation of Tyger River's café, ensuring that the café complied with all policies, and handling any food-related complaints at Tyger River. He filed requests to staff and grievances about these issues while at Tyger River, but the issues remained unresolved. He alleges that in March 2023, he was seen by a doctor who prescribed him a protein powder supplement as a treatment for his weight loss, and that at one point he weighed only 132 pounds.

In the court's order authorizing service of this case, the court construed the Amended Complaint as raising claims under 42 U.S.C. § 1983 for deliberate indifference to conditions of confinement in violation of the Eighth Amendment. (ECF No. 71 at 1.) No party objected to the court's construction of claims. (ECF Nos. 82, 85.) Plaintiff seeks an injunction ordering the defendants to revise the alternate entrée menu to reflect a 2,800- to 3,000-calorie diet, cease limiting or restricting canteen purchases as a sanction for violating prison rules, allow indigent prisoners to apply for Supplemental Nutrition Assistance Program ("SNAP") benefits, allow prisoners to receive three meals a day on weekends, and cease using "filler" ingredients in the food and food not fit for human consumption. He also seeks money damages. Additionally, although Plaintiff moves to certify a class of similarly situated inmates, such relief is unavailable.[4]

---

[4] The United States Court of Appeals for the Fourth Circuit has held that *pro se* prisoners cannot bring a class action lawsuit. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[T]he competence of a layman representing himself [is] clearly too limited to allow him to risk the rights of others."); Fowler v. Lee, 18 F. App'x 164, 165 (4th Cir. 2001); see also Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981) (holding that a *pro se* prisoner's suit is "confined to redress for violation of his own personal rights and not one by him as a knight-errant for all prisoners"). And, generally, the Fourth Circuit rejects the right of individuals to litigate *pro se* on behalf of others. See Wojcicki v. SCANA/SCE&G, 947 F.3d 240, 244 (4th Cir. 2020) ("Allowing individuals to represent themselves pro se 'reflects a respect for the choice of an individual citizen to plead his or her own cause,' but so does the bar preventing individuals without legal expertise from representing others.") (quoting Myers v. Loudoun Cty. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005)). Moreover, the courts in this district generally do not allow *pro se* prisoners to proceed together in one action. See, e.g., Carroll v. United States, C/A No. 5:14-CV-02167-JMC, 2015 WL 854927, at *2 (D.S.C. Feb. 27, 2015); Williams v. Jones, C/A No. 9:14-787-RMG-BM, 2014 WL 2155251, at *10 (D.S.C. May 22, 2014).

## DISCUSSION

A.   **Judgment on the Pleadings**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings after the pleadings are closed. A motion for judgment on the pleadings should be granted when, viewing the facts in the light most favorable to the non-moving party, there remain no genuine issues of material fact, and the case can be decided as a matter of law. Tollison v. B & J Machinery Co., 812 F. Supp. 618, 619 (D.S.C. 1993). In considering a motion for judgment on the pleadings, the court applies the same standard as for motions made pursuant to Rule 12(b)(6). Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009). However, the court may also consider the defendant's answers. See Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014); see also Void v. Orangeburg Cty. Disabilities & Special Needs Bd., Civil Action No. 5:14-cv-02157-JMC, 2015 WL 404247, at *2 n.1 (D.S.C. Jan. 29, 2015).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in turn examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The court "may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those

attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson, 551 U.S. 89, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Defendants' Motion**

The defendants argue that Plaintiff has failed to allege that the named defendants personally participated in violating Plaintiff's constitutional rights.

A plaintiff in an action pursuant to § 1983 must plead that each defendant, through his or her own individual actions, violated the Constitution. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.  The doctrine of *respondeat superior* has no application under this section.' ") (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)).  In his Amended Complaint, Plaintiff alleges that he complained about the deficient meals to the respective defendant wardens and food service specialists at Lieber and Tyger River, and, importantly, he alleges that these individuals were responsible not just for overseeing operation of their respective cafés, but also for ensuring that the cafés complied with all applicable policies and regulations.  See Wright, 766 F.2d at 850 (providing the defendant must have "personal knowledge

of and involvement in the alleged deprivation" of the plaintiff's rights to be liable under § 1983). Similarly, Plaintiff alleges that the defendant nutritionists/dieticians were responsible for creating and approving the deficient alternate entrée menu. See id. In his response in opposition to the defendants' motion, Plaintiff further elaborates on the roles of the defendants—specifically that the defendant food service specialists were present in the cafés during the preparation and service of the deficient food trays, and that the defendant nutritionists/dieticians were responsible for the menu itself, including ensuring its caloric and nutritional value was appropriate. (See Pl.'s Resp. Opp'n, ECF No. 120.)

Plaintiff's response also appears to clarify that the warden defendants were responsible in that they handled the grievances Plaintiff filed regarding the food issues, but did not take any action. (Id.) Supervisory officials may not be held liable under a *respondeat superior* theory of liability for the unconstitutional actions of their subordinates, but a supervisor's "indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). The United States Court of Appeals for the Fourth Circuit has adopted the following test to determine whether a plaintiff can demonstrate supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted). The behavior that poses a risk of constitutional injury must be "widespread" or at least have occurred on "several different occasions"; single or isolated incidents are not enough. Id. Specifically as to the second

element, the plaintiff bears a "heavy burden of proof in establishing deliberate indifference," but it may be shown by showing the supervisor's "continued inaction in the face of documented widespread abuses." Id. (quoting Slakan, 737 F.2d at 372-73.) In light of the potentially limitless number of officials who could ultimately be liable, the "outer limits" of supervisory liability are determined by "pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." Slakan, 737 F.2d at 373. Here, Plaintiff alleges that he notified the wardens over several years regarding his deficiencies with his food and the state of his health. He alleges that, despite this knowledge, the defendant wardens failed to take any supervisory action to have the other defendants address the danger to his health, thus leading to Plaintiff's continued injuries and the violation of his constitutional rights.

## RECOMMENDATION

Accordingly, because Plaintiff's allegations, taken as true, plausibly state a claim of deliberate indifference to a serious risk of harm, the court recommends that the defendants' motion be denied. (ECF No. 93.) As the dispositive motions deadline has passed, the case is ready to be placed on the trial docket.

May 14, 2025  
Columbia, South Carolina

_____  
Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).